IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CYNTHIA BAKER et al.,
　　　　　　Plaintiffs,
　　　v.
JOHN WALTERS, et al.,
　　　　　　Defendants.

No. 3:22-cv-552-M

## MEMORANDUM OPINION AND ORDER

Plaintiffs Cynthia and Christopher Baker (the "Bakers") filed a Motion to Compel, *see* Dkt. No. 26 (the "MTC"), which United States District Judge Barbara M. G. Lynn has referred to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b), *see* Dkt. No. 27.

The MTC asks the Court to compel Defendants John Walters, as trustee of the Camellia Trust, ETA, and Tyler Seguin to respond to Plaintiffs' First Set of Requests for Production to Defendants, which were served on Defendants on October 20, 2022.

After the Bakers filed their MTC, Defendants served Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production. *See* Dkt. No. 29-6.

Defendants then responded to the MTC, *see* Dkt. No. 28, and the Bakers filed a reply, *see* Dkt. No. 29.

For the reasons and to the extent explained below, the Court now grants the MTC [Dkt. No. 26].

### Background

The Bakers' MTC explains that,

-1-

[b]y this lawsuit, the Bakers seek recovery for damages that they suffered when Defendants foiled the Bakers' efforts to close on a residential property located in Dallas, Texas (the "Property"). As the Court is aware, the Bakers entered into a contract (the "Contract") to purchase the Property for $1.789 million. Prior to closing, however, the Property was destroyed by a tornado. When this unfortunate event occurred, Defendants realized that they would receive more money on an insurance claim for destruction of the Property than they would by selling it to the Bakers under the Contract – which granted the Bakers an option to: (1) close on the Property in its damaged condition and (2) accept an assignment of Defendants' Homeowners Insurance Policy (the "Policy") to facilitate repairs. Thus, Defendants set out to frustrate the Bakers' efforts to purchase the Property – including (but not limited to) by: (1) denying the Bakers access to key information necessary to close on the Property and (2) instructing AIG Property Casualty Company to veto key closing conditions (i.e., the assignment of Policy benefits). Through these (and other) acts, Defendants circumvented the Bakers' efforts to purchase the Property – and were rewarded to the tune of at least $3 million.

To investigate these claims, the Bakers served their First Set of Requests for Production (the "Requests") on Defendants on October 20, 2022. Thus, Federal Rule of Civil Procedure 34 required Defendants to respond to the Requests on or before November 21. However, Defendants failed to respond to the Requests or produce documents responsive thereto. In an effort to resolve this discovery dispute, the Bakers contacted Defendants via electronic mail regarding the status of their responses/production on November 28 and 29, as well as on December 1 and 5. In these correspondences, the Bakers requested that Defendants commit to producing responsive documents on a date certain. On December 5, Defendants indicated that they "should be able to produce the majority, if not all, of the documents by early to mid-week [the week of December 12]." Once again, in an effort to resolve this discovery dispute, the Bakers responded that they would "wait until close of business on Thursday, December 15," but noted that if they did "not receive a complete production by then, [they would] be forced to file a motion." Unfortunately, Defendants have yet to respond to the Requests or produce any documents responsive thereto.

While the Bakers would prefer to resolve this dispute without drawing on the Court's limited resources, it has become clear that intervention will be required to force Defendants' compliance. Thus, the Bakers respectfully request that the Court compel Defendants to

-2-

produce all documents responsive to the pending Requests and grant the Bakers such other and further relief as they may be entitled.

Dkt. No. 26 at 1-3 (cleaned up).

In response, Defendants explain that

Plaintiffs served their First Sets of Requests for Production on Defendants on October 20, 2022. On December 6, 2022, Defendants expressed their intent to produce responsive documents by early to mid-week, the week of December 12, 2022, and inquired as to Plaintiffs' considerations for the entry of a Protective Order to cover production of confidential documents. In an email on December 15, 2022, counsel for Defendants explained production of documents was forthcoming, but slightly delayed by unavoidable health issues plaguing Defendants' counsel, which kept him out of the office and prohibited him from producing documents. Counsel for Plaintiffs and Defendants spoke on the phone on December 16, 2022 and agreed that Defendants could take the following weekend and beginning part of the following week, if necessary, to finalize and prepare Defendants' document production.

On Tuesday, December 20, 2022, Defendants produced to Plaintiffs a link to Defendants' Document Production JWTS 000001-000224. Defendants also served Plaintiffs with Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production and a draft Joint Motion for a Protective Order for Plaintiffs' review.
....

After receiving Plaintiffs First Set of Requests for Production, Defendants undertook a diligent effort to identify and compile documents responsive to the requests.

Responsive documents were compiled, reviewed, Bates labeled, and produced on December 20, 2022.

In this production, Defendants produced two hundred twenty four (224) documents in response to Plaintiffs' Fist Set of Requests for Production. The documents produced include the Unimproved Property Contract for the property at issue in this matter (JWTS 000001-000009), the Declaration of Trust Establishing Camellia Trust (JWTS 000010-000034), numerous emails and attachments relating to the property at issue among and between, including, but not limited to, John Walters, AIG, Doug Wall, Compass Bank, Tyler Seguin, and Capital Title (JWTS 000035-000053), a Release of Earnest Money document (JWTS 000053 - 000152), a Structural Engineering Report (JWTS 000076-000150), and

the Insurance Policy covering the property at issue. (JWTS 000153-000224).

....

Defendants have produced all documents responsive to Plaintiffs' First Set of Requests for Production that are within Defendant's possession, custody, or control. Parties have an ongoing duty to supplement their discovery responses pursuant to Rule 26(e)(1)(A). *See, e.g.*, *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 374-75 (5th Cir. 2004) ("Rule 26(e) imposes 'a duty to supplement or correct [a] disclosure or response to include information thereafter acquired'"). As such, and as Defendants told Plaintiffs' in a conference call on December 22, 2023, to the extent additional responsive documents are identified, these documents will immediately be processed and produced pursuant to Defendants' obligations under the Federal Rules of Civil Procedure. However, there are no documents being withheld, either based on discovery objections or privilege, and therefore Defendants "cannot produce what [they do] not have". *ORIX USA Corp. v. Armentrout*, No. 3:16-mc-63-N-BN, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016)(stating a court cannot compel a party to produce non-existent documents).

For the above stated reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel, and for all other relief to which Defendants are entitled.

Dkt. No. 28 at 1-3 (cleaned up).

In reply, the Bakers explain that they "reiterate their request that the Court compel Defendants to respond to written discovery served on or about October 20, 2022," where

the Bakers were forced to file their Motion on December 15, 2022 after Defendants refused to respond to the Bakers' Requests – let alone produce documents responsive thereto. By their Response, Defendants seek to create the impression that they have since diligently endeavored to fulfil their discovery obligations. In fact, Defendants affirmatively represent to the Court that – after being served with the Bakers' Motion – they: (1) "undertook a diligent effort to identify and compile documents responsive to the [R]equests" and (2) "produced all documents responsive to [the Requests] that are within Defendant's possession, custody, or control." Thus, Defendants contend that the Court lacks

authority to grant the Bakers' Motion – arguing that the Court cannot compel them to "produce what [they do] not have." Unfortunately, each of the representations made by Defendants are demonstrably false.

Dkt. No. 29 at 1-2 (cleaned up).

The Bakers ask the Court to "compel Defendants to produce all documents responsive to the pending Requests" and "provide a sworn statement of compliance in accordance with the *Armentrout* opinion" and also to "overrule Defendants' untimely and improper objections," where, although, "by their response, Defendants represent to the Court that 'there are no documents being withheld, either based on discovery objections or privilege,'"

> Defendants also seemingly indicate that they believe they may obtain more responsive materials at a later date. Further, as noted herein, it appears that Defendants are either withholding a wide swath of responsive materials or they have failed to exercise even cursory diligence in gathering documents/communications. Thus, the Bakers respectfully request that the Court overrule Defendants' untimely and improper objections to ensure a final resolution of this discovery dispute.
>
> It is axiomatic that "[t]he party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *see also Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018). "Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objection." *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016). "A resisting party's failure to support its objections, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Janvey v. Alguire*, No. 3:09-CV-724-N-BQ, 2018 WL 11362638, at *5–6 (N.D. Tex. Oct. 17, 2018). Thus, "to properly state an objection," there must be: (1) a previously made, timely objection in response; (2) that is specific and not general or boilerplate; and (3) a reurging of the same timely, specific objection at the Motion to Compel stage. *Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*, No. 2:18-CV-166-Z-BR, 2020 WL 520608,

at *4 (N.D. Tex. Jan. 13, 2020). Here, Defendants have failed to meet their burden in every regard.

First, Defendants' objections should be overruled because Defendants failed to timely assert them. A party must respond to written discovery within 30 days of service. Fed. R. Civ. P. 26(b)(2)(A), 34(b)(2)(A). When a party fails to timely respond to written discovery, it waives any objections to those requests. *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). "This waiver applies to all objections, including objections based on attorney-client privilege and work product." *Madison One Holdings, LLC v. Punch Int'l, B.V.*, No. 4:06-CV-03560, 2008 WL 11483220, at *1 (S.D. Tex. Aug. 27, 2008); *see also Booklab, Inc. v. Jensen*, No. A-07-CA-536 LY, 2008 WL 11333871, at *1 (W.D. Tex. Jan. 14, 2008). Here, the Bakers served their Requests on October 20, 2022. Thus, Federal Rule of Civil Procedure 34 required Defendants to respond to the Requests on or before November 21. However, Defendants failed to respond (or assert any objection) to the Requests until December 20, 2023 – 60 days after their deadline to do so and 7 days after the Bakers were forced to file their Motion. Therefore, Defendants' objections are untimely and must be overruled.

Even had Defendants timely asserted their objections, they failed to state them with the requisite degree of specificity. Indeed, attached hereto as Exhibit H is chart that: (1) summarizes Defendants' boilerplate objections and (2) provides numerous opinions in which district courts have overruled comparable objections. *Janvey*, 2018 WL 11362638, at *5–6 ("General objections such as the ones asserted by [Defendants] are meaningless and constitute a waste of time for opposing counsel and the court.").

Finally, Defendants wholly fail to reurge their (untimely) objections in the face of the Bakers' Motion – let alone produce evidence in support thereof. *See id.* at *3 ("In response to a motion to compel, an objecting party must 'urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection.'").

Dkt. No. 29 at 8-10 (cleaned up).

## Legal Standards and Analysis

The Court has previously laid out standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel as to Federal Rule of Civil Procedure 34 requests for production, and the Court incorporates and will apply, but will not repeat, those

standards here. *See VeroBlue Farms USA Inc. v. Wulf*, ___ F.R.D. ____, No. 3:19-cv-764-X, 2021 WL 5176839, at *5-*9 (N.D. Tex. Nov. 8, 2021); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86 (N.D. Tex. 2018).

## I.   Untimely Objections

The Bakers served Plaintiffs' First Set of Requests for Production to Defendants on October 20, 2022. Defendants' responses were due on November 21, 2022. *See* FED. R. CIV. P. 34(b)(1). Defendants did not served their written responses and objections or produce written documents until 29 days later, on December 20, 2022. *See* Dkt. No. 29-6.

The Court has previously explained that, "as a general rule, when a party fails to object timely … production requests …, objections thereto are waived"; that, "[i]f a party fails to timely respond in writing after being served with a request for production of documents, it is appropriate for the Court to find that the party's objections are waived, unless the court finds good cause and excuses [that] failure"; and that, "even where the responding party has timely served some objections to a Rule 34(a) request, this waiver extends to any grounds not stated in a timely objection." *Lopez*, 327 F.R.D. at 582 (cleaned up).

"In deciding whether good cause exists, courts consider (1) the length of the delay in failing to object; (2) the reason for the delay; (3) whether there was any bad faith or dilatory action of the party that failed to object; (4) whether the party seeking discovery was prejudiced by the failure; (5) whether the document production request

was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh result on the defaulting party." *Evanston Ins. Co. v. McDonnell Coates LLP*, No. 3:20-cv-770-D, 2021 WL 2400992, at *3 (N.D. Tex. June 11, 2021).

Defendants' explanation for its late-served objections based on their counsel's illness only accounts for the last half of the 29-day period in which their responses and objections were overdue. The Bakers' counsel began asking over email about the tardy responses and production on November 28, 2022 (7 days after the deadline) and again asked over email at least twice more over the following 7 days. *See* Dkt. No. 26 at 1-2; Dkt. No. 26-2.

But the Court need not determine whether Defendants' objections are waived by the 29-day delay because the objections are all (other than as to privilege and work product) overruled or waived for other reasons, as the Court explains below.

As to Defendants' objections based on attorney-client privilege or work product protection, Defendants, as parties often do, made specific objections to certain of the Baker's Rule 34(a) request for production "to the extent it seeks documents and information protected by the attorney-client privilege, work product doctrine, or any similar privilege." *E.g.*, Dkt. No. 29-6 at 6 of 29.

But those objections do not, alone, fulfill the withholding party's obligations that Federal Rule of Civil Procedure 26(b)(5)(A) imposes by requiring that, "[w]hen a party withholds information otherwise discoverable by claiming that the information

-8-

is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A); *see Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 20-23 (N.D. Tex. 2021); *accord Heller v. City of Dallas*, 303 F.R.D. 466, 486 (N.D. Tex. 2014) ("To comply with the requirements to support withholding any responsive document or information as privileged or protected work product, a privilege log or equivalent document complying with Federal Rule of Civil Procedure 26(b)(5)(A)'s requirements must be produced for any documents, communications, or other materials withheld from production on the grounds of attorney-client privilege, work product, or other privilege, immunity, or protection. Accordingly, a party may properly raise and preserve an objection to production of documents in response to a specific document request or interrogatory by objecting "to the extent" that the requests seeks privileged materials or work product, so long as the responding party also provides the information required by Rule 26(b)(5)(A).").

At the same time, the withholding party, to comply with Rule 26(b)(5)(A), may – and often does – serve a privilege log after, as Rule 34(b) requires, timely serving the party's written objections and responses to the requests for production. *See Heller*, 303 F.R.D. at 486; *see generally E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (explaining that, "although Rule 26 does not attempt to define for each case

what information must be provided, a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to test[] the merits of the privilege claim" and that "[c]ontinual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith" (cleaned up)).

Under these circumstances, the Court does not find that Defendants' 29-day delay in serving objections waived their right to withhold privileged or work product documents as outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(1).

## II.     Improper Objections

As the Bakers assert, "[e]ven had Defendants timely asserted their objections, they failed to state them with the requisite degree of specificity" and then "fail to reurge their (untimely) objections in the face of the Bakers' [MTC] – let alone produce evidence in support thereof." Dkt. No. 29 at 10.

Defendants served objections to all 59 requests in Plaintiffs' First Set of Requests for Production to Defendants. *See* Dkt. No. 29-6.

As the Bakers' summary chart filed with their reply reflects, those objections include relevance (including based on the obsolete "reasonably calculated" standard), overbreadth, vagueness and ambiguity, undue burden, and attorney-client privilege and work product objections. *See* Dkt. No. 29-5.

-10-

And, as the Bakers' summary chart illustrates, those objections are all unsupported boilerplate and are invalid based on Defendants' failing to make the objections "with specificity" and "to explain and support [their] objections." *VeroBlue*, 2021 WL 5176839, at *7 (cleaned up).

As to relevance and proportionality and reasonable particularity, Defendants assert, for example:

- "This Request encompasses documents that are irrelevant to the merits of this case and whose connection to the claims or defenses in this suit is highly remote and attenuated. In this way, this Request fails to describe with reasonable particularity each item or category of items requested, as required by Federal Rule of Civil Procedure 34(b)(1)(A)."
- "Defendants object to this Request because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."
- "Defendants further object to this Request as overbroad and not proportional to the needs of this case because it lacks appropriate limitations in scope and because any relevance of the information sought would be significantly outweighed by the costs and burdens on Defendants to produce any document 'evidencing, summarizing, and/or commenting on discussions with AIG concerning the Claim.'"

Dkt. No. 29-6.

As the Court has explained,

[u]nder Rule 26(b)(1), "[u]nless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

"The 2015 amendments to Rule 26 deleted 'from the definition of relevance information that appears 'reasonably calculated to lead to the discovery of admissible evidence' because '[t]he phrase has been used by some, incorrectly, to define the scope of discovery' and 'has continued to create problems' given its ability to 'swallow any other limitation on the scope of discovery.'"

"Under Rule 26(b)(1), [as amended,] discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Id.* at 280.

*Lopez*, 327 F.R.D. at 573 (cleaned up).

"In the Fifth Circuit, a party who opposes its opponent's request for production [must] show specifically how ... each [request] is not relevant." *Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*, No. 3:21-cv-327-D, 2022 WL 7662658, at *2 (N.D. Tex. Oct. 13, 2022) (cleaned up).

Defendants' relevance objections do not explain how the materials that each requests seeks are irrelevant to the claims or defenses in the case or, for that matter, are not proportional to the needs of the case. *See Lopez*, 327 F.R.D. at 585 (explaining that the burden is placed "on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or fails the required proportionality calculation or is otherwise objectionable").

Neither do Defendants explain how any request fails Rule 34(b)(1)(A)'s

reasonable particularity requirement. As the Court has explained,

> Federal Rule of Civil Procedure 34(b) provides that a request for production or inspection "must describe with reasonable particularity each item or category of items to be inspected" or produced. FED. R. CIV. P. 34(b)(1)(A). The test for reasonable particularity is whether the request places the party upon 'reasonable notice of what is called for and what is not. Therefore, the party requesting the production of documents must provide sufficient information to enable [the party to whom the request is directed] to identify responsive documents. The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required.
>
> This test, however, is a matter of degree depending on the circumstances of the case. But, although what qualifies as reasonabl[y] particular surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said to apprise a person of ordinary intelligence what documents are required and [to enable] the court ... to ascertain whether the requested documents have been produced. A Rule 34(a) request made with reasonable particularity does not require a reasonable attorney or party attempting to properly respond to ponder and to speculate in order to decide what is and what is not responsive.
>
> All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A). For example, [b]road and undirected requests for all documents which relate in any way to the complaint do not meet Rule 34(b)(1)(A)'s standard. Similarly, [a] request for "all documents and records" that relate to "any of the issues," while convenient, fails to set forth with reasonable particularity the items or category of items sought for [the responding party's] identification and production of responsive documents.
>
> Based on these rules, this Court has, for example, determined that an interrogatory asking a defendant to "[d]escribe in detail all facts, proof, or evidence which, in whole or in part, form the basis of any defendant or affirmative defenses pled in this lawsuit" is an improper, so-called blockbuster interrogatory. Likewise, the Court has sustained objections to Rule 34(a) requests for "[a]ll documents which evidence, describe, concern, or otherwise relate to the allegations in your Complaint" and "[a]ll documents not previously produced that support, contradict, or otherwise relate in any way to any of the allegations you have made in this lawsuit."
>
> ....

It is no answer for attorneys' serving blockbuster interrogatory or all-encompassing or broad and undirected requests for production to say that they are not certain what the responding party has in its possession, custody, or control and do not want to miss anything – and so will ask for, effectively, everything. Requests and interrogatories must be made in compliance with the Federal Rules discussed above and, if further discovery or investigation later reveals the existence or possible existence of additional relevant materials or information with Rule 26(b)(1)'s scope, counsel can serve additional discovery requests and, if necessary, seek leave to do so.

*Lopez*, 327 F.R.D. at 575-76, 577-78 (cleaned up). On the Court's review of the Bakers'

request, no request fails Rule 34(b)(1)(A)'s standard.

As to overbreadth, Defendants assert, for example:

- "Defendants object to this Request as overly broad."
- "Defendants further object to this Request because the Request's disregard as to the breadth and relevance of the documents encompassed would also make it impossible for Defendants to ascertain that they have satisfactorily produced 'all' responsive documents to this Request."
- "Defendants object to this Request as overly broad and lacking in limitations as to scope or subject matter."
- "Defendants object to this Request as overbroad and unduly burdensome to the extent it seeks information that is irrelevant nor reasonably calculated to lead to the discovery of admissible evidence."
- "Defendants further object to this Request as overbroad and not proportional to the needs of this case because it lacks appropriate limitations in scope and because any relevance of the information sought would be significantly outweighed by the costs and burdens on Defendants to produce any document 'evidencing, summarizing, and/or commenting on discussions with AIG concerning the Claim.'"

Dkt. No. 29-6. Defendants' overbreadth objections fail to "explain the extent to which [each request] is overbroad and … respond to the extent that it is not – and explain the scope of what the responding party is … responding to." *Heller*, 303 F.R.D. at 488. Neither do Defendants "show how the requested discovery is overly broad … by

-14-

submitting affidavits or offering evidence revealing the nature of the burden." *Lopez*, 327 F.R.D. at 580 (cleaned up).

Defendants improperly object as vague and ambiguous objections to requests using the terms or phrases "regarding," "listings," "evidencing," "summarizing," "commenting," "discussing," "summarizing," "opining," "constituting," "reflecting," "relating," and "depicting the Property." Dkt. No. 29-6.

As the Court has explained, "a party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity; [a] party objecting on these grounds must explain the specific and particular way in which a request is vague; [t]he responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories and, [i]f necessary to clarify its answers, ... may include any reasonable definition of the term or phrase at issue; and[, i]f a party believes that the request is vague, that party [should] attempt to obtain clarification [by conferring with the requesting party] prior to objecting on this ground." *VeroBlue*, 2021 WL 5176839, at *8 (cleaned up).

Defendants have done none of that other than to assert, as to some requests, that the request as worded "encompasses swaths of information that are both irrelevant to the merits of this case and disproportionate to the needs of this case" – without further explanation of how that may be so. And Defendants have not explained or established how any of the objected-to requests are "so vague or

ambiguous as to be incapable of reasonable interpretation and to prohibit [Defendants'] responses." *Heller*, 303 F.R.D. at 492.

As to undue burden, Defendants assert, for example:

- "Defendants object to this Request as overbroad and unduly burdensome to the extent it seeks information that is irrelevant nor reasonably calculated to lead to the discovery of admissible evidence."
- "Defendants further object to this Request as vague, ambiguous, and overburdensome because its demand for the production of documents 'evidencing, summarizing, and/or commenting' on the ownership of 'any insurance policies' encompasses swaths of information that are both irrelevant to the merits of this case and disproportionate to the needs of this case."
- "Defendants further object that the Request is overly broad, vague, ambiguous, and overly burdensome because it references the entirety of page 6, rather than a specific paragraph or a part of a paragraph. Such a broad request encompasses swaths of information that are both irrelevant to the merits of this case and disproportionate to the needs of this case."

Dkt. No. 29-6. Defendants' objections based on alleged undue burden or "overly burdensome" are unsupported boilerplate and also fail to comply with the requirement that "[a] party resisting discovery must show how the requested discovery is … unduly burdensome … by submitting affidavits or offering evidence revealing the nature of the burden." *Lopez*, 327 F.R.D. at 580 (cleaned up). That, too, "makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

And, other than in response to Requests for Production Nos. 28, 52, and 54, Defendants responded to all of the Bakers' requests "[s]ubject to and without waiving the foregoing objections," often stating that Defendant will produce documents that

"are directly relevant to Plaintiffs' claims and Defendants' defenses" or to a more specific matter. Dkt. No. 29-6 at 6-29 of 29.

But responding "'subject to' and 'without waiving' objections is improper, as the undersigned and many other judges in this circuit and elsewhere have now made clear for several years." *VeroBlue*, 2021 WL 5176839, at *8 (cleaned up).

And Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) does not impose a "directly relevant" limitation on the scope of permissible discovery, and, under Rule 26(b)(1), "[c]ourts construe relevance broadly, as a document need not, by itself, prove or disprove a claim or defense or have strong probative force to be relevant." *Archer v. Kennedy*, No. 3:21-CV-748-N, 2022 WL 17069122, at *1 (N.D. Tex. Nov. 16, 2022).

As to objections based on attorney-client privilege or work product protection, "[t]he scope of discovery in civil cases under Federal Rule of Civil Procedure 26(b)(1) does not include privileged information or, absent the showing that Federal Rule of Civil Procedure 26(b)(3) mandates, work product protected information." *Randstad Gen. Ptr. (US), LLC v. Beacon Hill Staffing Group, LLC*, No. 3:20-cv-2814-N-BN, 2021 WL 4319673, at *16 (N.D. Tex. Sept. 23, 2021) (cleaned up). Still, if Defendants are withholding materials that are responsive to Requests for Production Nos. 2, 9, 11, 17, 23, 28, 29, 32, 33, 34-43, 45-49, 53, and 55-57 based on attorney-client privilege

or work product protection, Defendants ae required, as the Court explained above, to "comply with Rule 26(b)(5) and serve a privilege log in support of any claim for withholding responsive information based on attorney-client privilege and work product protection." *Id.* at *21. It appears that Defendants have not done so because, as of the time of their response's filing, "there are no documents being withheld … based on … privilege." Dkt. No. 29 at 3.

But all of Defendants' other objections are overruled as unsupported boilerplate. Even if they were not, the objections are waived in any event because Defendants did not urge those objections and "argue[] in support [of them] in responding to the MTC." *Lopez*, 327 F.R.D. at 592.

And, other than as to privilege or work product, Defendants' "objections are still improper even if – and, in fact, are improper for the additional reason that – [Defendants' response to the MTC, *see* Dkt. No. 28 at 3, reports] that [Defendants are] not withholding any [documents] based on those objections." *VeroBlue*, 2021 WL 5176839, at *27.

Rule 34(b)(2) requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection" and so reflects that "[o]bjections must have a consequence" – that is, that parties should only object where the "objection … preclude[s] or prevent[s] a response, at least in part," and "the request is truly objectionable" because "the information or documents sought are not properly discoverable under the Federal Rules." *Id.* at *7, *8, *27 (cleaned up); *see*

*also id.* at *24 ("Making unsupported objections along with a statement that the party is not actually withholding any documents based on the objection – either because the objection would not cover the responsive documents that the party has located and is producing or because there are no responsive documents to withhold or produce – does not make serving unsupported objections any less improper. General, boilerplate, and unsupported objections preserve nothing and – regardless of a party or an attorney's concerns about what they do not know or have not yet located or may later find – are improper and ineffective." (cleaned up)).

Rule 34(b), "in combination with [Federal Rule of Civil Procedure 26(g)(1)]," is written and structured as it is "so that both the requesting party and the court may be assured that all responsive, non-privileged materials are being produced, except to the extent a valid objection has been made." *Heller*, 303 F.R.D. at 487 (cleaned up); *accord* FED. R. CIV. P. 34, advisory committee notes, 2015 amendments ("Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections.").

Defendants' written objections and responses to the requests for production make no mention of whether Defendants are withholding any responsive documents

and, if so, what documents and why. *Compare* Dkt. No. 29-6, *with VeroBlue*, 2021 WL 5176839, at *7 ("In sum, [a] party served with written discovery must fully answer each … document request to the full extent that it is not objectionable and affirmatively explain what portion of … [a] document request is objectionable and why, affirmatively explain what portion of the … document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive … documents have been withheld." (cleaned up)).

But, in any event, as the Court explained above, Defendants may no longer stand on any objections to producing responsive, non-privileged documents.

## III.   Incomplete Production

While not pressing or supporting their objections to each request, Defendants urge the Court to deny the Bakers' MTC because Defendants have produced documents in response to Plaintiff's First Set of Requests for Production to Defendants and report that they are not withholding production of any document based on objection or privilege. *See* Dkt. No. 28 at 2-3.

In support of maintaining their request that the Court "compel Defendants to produce all documents responsive to the pending Requests," the Bakers' reply explains that

> [e]ven a cursory review of Defendants' December 20, 2022 production (the "Initial Production") reveals that Defendants are intentionally withholding a wide swath of responsive documents that are detrimental to their position – including materials that the Honorable Judge Barbara M. G. Lynn requested during the hearing held on Defendants' Motion to Dismiss.

As noted in the Motion, the Bakers seek recovery for damages that they suffered when Defendants foiled the Bakers' efforts to close on a residential Property. Indeed, after the Property was destroyed by a tornado pre-closing, Defendants realized that they would receive more money on an insurance claim for destruction of the Property than they would by selling it to the Bakers under the Contract – which granted the Bakers an option to: (1) close on the Property in its damaged condition and (2) accept an assignment of Defendants' Policy to facilitate repairs. Thus, Defendants set out to frustrate the Bakers' efforts to purchase the Property – including (but not limited to) by instructing AIG Property Casualty Company ("AIG") to veto key closing conditions (i.e., the assignment of Policy benefits). Through these (and other) acts, Defendants circumvented the Bakers' efforts to purchase the Property – and were rewarded to the tune of at least $3 million. To retain their inequitable windfall, Defendants misled the Bakers regarding their efforts to obtain an assignment and/or sell the Property. In fact, while Defendants were claiming that AIG would not agree to key closing conditions, Defendants were (on the other hand) explicitly instructing AIG to veto the assignment – in violation of established Texas law.

For example, on October 29, 2019, counsel for Defendants sent a pre-closing correspondence to the Bakers in which he represented that "it [was Defendants'] understanding that when AIG was contacted, AIG noted that the [P]olicy contains a no-assignment provision and has further taken the position that the [P]olicy is non-transferable." He also represented that "AIG has further stated that a change in ownership [of the Policy and/or Policy benefits] is a material change in risk not covered by the insuring agreement." Then, on November 7, 2019, counsel again represented that Defendants had "received written confirmation that AIG will not consent to the assignment of the [P]olicy, rights or interests related thereto, or the proceeds." Thus, he asserted that "the option provided by Section 14(c) is not applicable, as the insurance proceeds are not assignable under the terms of the policy previously cited and referenced."

Not only have Defendants withheld these communications, but they also refuse to produce any of the materials referenced therein (i.e., written confirmation that AIG would not consent to an assignment of the Policy in 2019). In this regard, Defendants' representation that they "produced all documents responsive to [the Requests] that are within [their] possession, custody, or control" is incorrect. Indeed, the very individual responsible for verifying Defendants' (mis)representations of compliance is in possession of unproduced material responsive to the Requests. Worse still, many of these communications were not only

-21-

quoted verbatim in the Bakers' Complaint, but the Bakers also informed Defendants that they were withheld from the Initial Production during the December 22, 2022 conference call referenced in the Response (the "Conference").

Defendants' reluctance to produce these materials is understandable – although impermissible – as it appears that one or more of their representations were false. Indeed, materials received from AIG reveal that it stood ready, willing, and able to assign Policy benefits to the Bakers. In an effort to retain their inequitable windfall, however, Defendants instructed AIG not to permit an assignment of Policy benefits. For example, on January 6, 2020 – sixty (60) days after Defendants represented that they received "written confirmation" that AIG would not consent to the assignment of the "[P]olicy, rights or interests related thereto, or the proceeds," Defendants demanded that AIG send an email confirming that it "[would not] allow an assignment of the [P]olicy." The following day, AIG responded that it was "not going to agree to any assignment of the policy nor assignment of benefits, given [Mr. Seguin's] stated position that he does not want any assignment."

Defendants did not produce this communication – despite: (1) its being quoted verbatim in the Complaint and (2) the Bakers' informing Defendants it was withheld from the Initial Production during the Conference.18 In fact, the only correspondence that Defendants produced from AIG related to the Bakers' request for assignment was a January 13, 2020 email in which AIG indicated – as demanded by Tyler Seguin – that "AIG does not agree to any assignment of the [P]olicy nor of its benefits." In this regard, it is clear that Defendants have not only failed to produce "all documents responsive to [the Requests] that are within [their] possession, custody, or control," but also that they are producing only the materials that they deem beneficial to their defense. Indeed, despite the undeniable relevance/importance of Defendants' correspondences with AIG, the Initial Production fails to include wide swath of these materials.

In yet another example of Defendants' selective production, Defendants are withholding responsive materials related to the operation, ownership, and/or management of the Camellia Trust ETA (the "Trust"). In this proceeding, Defendants assert a series of defenses that rely on a very precise delineation of liability (allegedly) created by a separation of ownership between the Property and the Policy. For example, in their Motion to Dismiss, Defendants asserted that all claims asserted against them should be dismissed because: (1) the Policy was issued in Tyler Seguin's name, (2) the Trust owned the Property, and (3)

-22-

the Contract only required an assignment of the "Seller's" insurance benefits. During the hearing held on this Motion, the Honorable Judge Barbara M. G. Lynn requested to review the application for insurance that Defendants submitted to procure the Policy (the "Application"). Defendants were not only unable to provide the Application to the Court, but also refused to include it in their Initial Production. Indeed, Defendants have failed to produce any communications exchanged with Rampart Brokerage Corporation – believed to be Defendants' insurance broker – regarding the Policy or Defendants' multi-million dollar claim for Property damage.

While Defendants' Motion to Dismiss based on the (alleged) delineation of ownership between the Trust and Mr. Seguin was unsuccessful, Defendants continue to assert similar defenses. In this regard, Defendants brought the operation, ownership, and/or management of the Trust into this dispute. Even so, they are unquestionably withholding a wide swath of materials necessary to review/assess these defenses. For example, on November 19, 2021, opposing counsel represented that John Walters was the Trustee of the Trust. To their credit, Defendants produced a Declaration of Trust Establishing Camellia Trust (the "Trust Agreement") which confirmed that Mr. Walters was appointed as Trustee of the Trust effective on September 13, 2016. However, Defendants withheld any materials/communications subsequent to the execution of the Trust Agreement. A review of applicable deed records, however, shows that – inconsistent with opposing counsel's prior representations – a correction instrument was filed in which an affiant avowed that Mr. Seguin was the "Trustee of the Camellia Trust u/t/a dated September 13, 2016." Defendants did not produce this instrument or any of the communications that predicated its filing. Once again, the Bakers inquired into this mater during the Conference to no avail.

Simply put, Defendants' Initial Production is a facade intended to create the appearance of compliance. This point is demonstrated when reviewing the composition of Defendants' 224-page production – of which 190 pages are insurance policies/reports and contracts:

- JWTS_000153–224 (71 pages): The Policy;
- JWTS_000076–150 (75 pages): Structural Engineering Report Commissioned by AIG;
- JWTS_000076–150 (24 pages): The Trust Agreement;
- JWTS_000061–71 (10 pages): Demolition Quote/Authorization Prepared by AIG; and
- JWTS_000001–10 (10 pages): Contract between Defendants and Subsequent Purchaser.

-23-

Removing these documents from the Initial Production brings Defendants' total page count to a lowly 34 pages – with only 14 pages of communications exchanged between Defendants and AIG. [The remaining 20 pages of communications were exchanged between Defendants and their real estate broker.] Suffice it to say, Defendants unquestionably exchanged more than 14 pages of communication before AIG paid Defendants' $2,847,355.14 property damage claim. Further, several key documents that underlie this dispute were excluded from the Initial Production. Indeed, Defendants failed to even produce the Contract by which they agreed to sell the Bakers the Property (or the two amendments made thereto). These and other omissions stand in stark contrast to Defendants' representation they "undertook a diligent effort to identify and compile documents responsive to the [R]equests."

Even in the face of the deficiencies noted herein, Defendants claim that the Court lacks authority to grant the Bakers' Motion because the Court cannot compel them to "produce what [they do] not have." To support this proposition, Defendants rely on *ORIX USA Corp. v. Armentrout*. As a preliminary matter, the *Armentrout* opinion is unquestionably distinguishable here (at a minimum) because Defendants' have not actually produced all documents within their possession, custody, or control. Defendants' reliance on this opinion is also misplaced, however, because the District Court noted that, while it could not compel the production of maters that "do not exist," the requesting party was still "entitled to an unequivocal representation, under oath, that [the respondent] ha[d] produced all documents that are responsive to the requests . . . and that are in his possession, custody, and control and that he [wa]s not withholding any responsive documents based on his objections or otherwise." *Armentrout*, 2016 WL 4095603, at *6 (N.D. Tex. Aug. 1, 2016).

Here, Defendants have offered no such statement – likely because they are aware that they have not met their discovery obligations. Thus, the Bakers respectfully: (1) reiterate their request that the Court compel Defendants to produce responsive documents and (2) provide a sworn statement of compliance in accordance with the Armentrout opinion.

Dkt. No. 29 at 2-8 (cleaned up).

The Court has previously explained that,

[i]n response to a [Federal Rule of Civil Procedure] 34(a)(1) RFP, "a party cannot produce what it does not have, and so, [c]learly, the court cannot compel [a party] to produce non-existent documents." But, "[i]n

responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, FED. R. CIV. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." And "[t]he fact that a party may disbelieve or disagree with a response to a discovery request ... is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect" or the requesting party's belief, without more, believes that a discovery production is not complete.

As a general matter, "[i]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility," and "[a] responding party is best situated to preserve, search, and produce its own [electronically stored information]," which "[p]rinciple ... is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel[, and eschewing 'discovery on discovery,'] unless a specific deficiency is shown in a party's production."

To make this showing of a specific or material deficiency in the other party's production to require the responding party to engage in additional searches or discovery efforts or to obtain "discovery on discovery" that is "both relevant and proportional to the needs of the case" under Rule 26(b)(1), the requesting party should make a showing, including through "the documents that have been produced," that allows the Court to make "a reasonable deduction that other documents may exist or did exist and have been destroyed" or must "point to the existence of additional responsive material."

*VeroBlue*, 2021 WL 5176839, at *9 (cleaned up).

In their reply (as quoted in full above), the Bakers have persuasively shown, including through the documents that have been produced or that Defendants have previously referenced in connection with this matter, that additional responsive materials exist that Defendants have not produced. *Accord* Maiden, 2022 WL 7662658, at *4 ("The documents Maiden is seeking, however, do not appear to be 'non-existent.' In its motion to compel, Maiden asks the court to order the DSS Defendants

to produce their 2022 Trial Balance Sheets and any other quarterly statements in their possession, and it attaches as exhibits to its motion examples of the types of documents it seeks.")

And, while Defendants now report that "there are no documents being withheld, either based on discovery objections or privilege," Dkt. No. 29 at 3, as the Court discussed above, their written responses and objections suggest that Defendants narrowly construed or in some cases limited the scope of a request in declaring what they would produce as responsive, *see* Dkt. No. 29-6.

Defendants' responding to all but 3 of the Bakers' 57 requests "[s]ubject to and without waiving the foregoing objections" further "leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be." *VeroBlue*, 2021 WL 5176839, at *8 (cleaned up).

To comply with the governing rules, "if no responsive documents exist, [Defendants'] responses must be sufficiently detailed so that the court can determine whether she has made a reasonable inquiry and has exercised due diligence, as Rule 26(g)(1)requires." *Coleman v. Cedar Hill Indep. Sch. Dist.*, No. 3:21-cv-2080-D, 2022 WL 1470957, at *5 (N.D. Tex. May 10, 2022); *accord VeroBlue*, 2021 WL 5176839, at *7, *9. Defendants have not complied with these requirements but now must do so as to each of the Bakers' requests. *See Coleman*, 2022 WL 1470957, at *5 ("Accordingly, consistent with the court's discussion above, Coleman must revisit her objection to RFP No. 17 and determine whether any responsive documents are being withheld on

the basis of the objection. If no responsive documents exists, Coleman must state this in her updated responses, with sufficient specificity.").

## IV.   Award of Expenses

Federal Rule of Civil Procedure 37(a)(5)(A) requires the Court to order payment of the movant's reasonable expenses in making a motion to compel, including payment of attorneys' fees, when a motion to compel is granted. See FED. R. CIV. P. 37(a)(5)(A).

But Rule 37(a)(5)(A) also requires the Court must give Defendants an opportunity to be heard as to an award of fees and expenses and provides three exceptions under which the Court must not order payment of the movant's fees and expenses. See FED. R. CIV. P. 37(a)(5)(A)(i)-(iii).

The Court finds that the Bakers filed their MTC motions only after attempting to obtain the responses to their discovery requests without court action, as the MTC and its supporting exhibits show. *See* Dkt. No. 26 at 2-3.

But the Court will grant Defendants John Walters, as trustee of the Camellia Trust, ETA, and Tyler Seguin an opportunity to, by **Thursday, February 16, 2023**, file a response describing why the Court should not award expenses under Rule 37(a)(5)(A) – specifically, requiring Defendants' and/or their counsel pay the Bakers their reasonable attorneys' fees and costs incurred in preparing and filing their MTC and reply and appendices in support – by fully discussing whether either of the other two exceptions applies or, specifically, whether Defendants' failures to timely and

properly respond and object to the Bakers' requests for production were "substantially justified" or whether other circumstances make an award of expenses under Rule 37(a)(5)(A) unjust.

If Defendants file a response, the Bakers may, by **Thursday, March 2, 2023**, file a reply in support of an award under Rule 37(a)(5)(A), which reply must be limited to addressing whether any exception under 37(a)(5)(A)(i)-(iii) should preclude an award of expenses.

The reply need not and should not include any affidavits or declarations supporting a lodestar determination for a fee award. If, based on this response and reply, the Court determines to award expenses, the Court will issue a separate order directing the filing of materials to determine the amount of any award.

## Conclusion

For the reasons and to the extent explained above, the Court grants Plaintiffs Cynthia and Christopher Baker's Motion to Compel [Dkt. No. 26] and orders Defendants John Walters, as trustee of the Camellia Trust, ETA, and Tyler Seguin to, by **Thursday, February 9, 2023**, serve on Plaintiffs Cynthia and Christopher Baker's counsel complete written responses – without objections – to Plaintiffs' First Set of Requests for Production to Defendants and produce all unproduced, non-privileged documents and electronically stored information that are responsive to Plaintiffs' First Set of Requests for Production to Defendants and that are in Defendant's possession, custody, or control, in compliance with Federal Rule of Civil

Procedure 34(b)'s requirements, as explained above and laid out in *VeroBlue*, 2021 WL 5176839, at *6-*9, and *Lopez*, 327 F.R.D. at 575-79.

SO ORDERED.

DATED: January 26, 2023

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE